ZELDES HAEGGQUIST & ECK, LLP
HELEN I. ZELDES (220051)
  helenz@zhlaw.com
ALREEN HAEGGQUIST (221858)
alreenh@zhlaw.com
AARON M. OLSEN (259923)
  aarono@zhlaw.com
225 Broadway, Suite 2050
San Diego, CA 92101
Telephone: (619) 342-8000
Facsimile: (619) 342-7878

Attorneys for Plaintiffs and the Proposed Class

[Additional counsel appear on signature page.]

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TODD QUARLES and TODD CARPENTER, Individually and on Behalf of All Others Similarly Situated, | Case No.: |
| Plaintiffs, | <u>CLASS ACTION</u> |
| v. | CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF |
| SAN JOAQUIN HILLS TRANSPORTATION CORRIDOR AGENCY, a Government Agency; FOOTHILL/EASTERN TRANSPORTATION CORRIDOR AGENCY, a Government Agency; 3M COMPANY, a Delaware Corporation; BRiC-TPS LLC, a California Limited Liability Corporation; ROSS CHUN, an Individual; CRAIG YOUNG, an Individual; INGE G. THULIN, an Individual; and WILLIAM P. DUFFY, an Individual DOES 1-50, Inclusive, | |
| Defendants. | <u>DEMAND FOR JURY TRIAL</u> |

ZELDES HAEGGQUIST & ECK, LLP

ZELDES HAEGGQUIST & ECK, LLP

Plaintiffs Todd Quarles and Todd Carpenter ("Plaintiffs"), by and through their attorneys, bring this action on behalf of themselves and all other persons similarly situated against Defendants the San Joaquin Hills Transportation Corridor Agency ("SJ TCA") and the Foothill/Eastern Transportation Corridor Agency ("F/E TCA") (collectively, the Transportation Corridor Agencies ("TCA")) and the TCA's independent contractors, 3M Company ("3M"), BRiC-TPS LLC ("BRiC-TPS"), and Ross Chun, an Individual, Craig Young, an Individual, Inge G. Thulin, an Individual, and William P. Duffy, an Individual, for: (1) violation of Article I, §7 of the California Constitution, (2) violation of California Business & Professions Code ("Bus. & Prof. Code") §17200, *et. seq*., and (3) violation of California Code of Civil Procedure §526a. The following allegations are based upon information and belief, including the investigation of Plaintiffs' counsel, unless stated otherwise.

## NATURE OF ACTION

1. Since their inception, toll road fees have been collected at manned and unmanned tollbooths located on the tollroads themselves. The recent conversion of California Highways 73, 133, 241 and 261 ("the Toll Roads") to an all-electronic cashless system unfairly penalizes unsuspecting drivers who do not have "FasTrak" passes or ExpressAccounts by citing them en route and fails to provide drivers with proper notice (of the toll, penalties, citation, vehicle registration liens) by ambushing them with cryptic and confusing roadside warnings that they must respond to while driving.

2. Plaintiffs bring this action to challenge Defendants' widespread misconduct in the processing, review and collection of toll evasion violation penalties, which deprive vehicle owners of their money and/or of possession, use and enjoyment of their vehicles, without adequate notice and a fair opportunity for a hearing and in violation of the California Consitution and state law.

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

**JURISDICTION AND VENUE**

3.     This Court has subject matter jurisdiction this action pursuant to 28 U.S.C. §1332(a)(2)(A) and §1332(d)(2), (5)(B) because Plaintiffs are of diverse citizenship of Defendant 3M Company, a Delaware Corporation, and the matter in controversy exceeds seventy-five thousand dollars ($75,0000.00) exclusive of interest and costs. The Court also has subject matter jurisdiction because Plaintiffs and over two-thirds of the Class Members are of diverse citizenship of Defendant 3M Company, and the aggregate amount in controversy exceeds five million dollars ($5,000,000.00) exclusive of interest and costs.

4.     This Court has jurisdiction over Defendants because they are residents of and/or doing business in the state of California. The Toll Roads are all located in Orange County, California. The Toll Roads Service Center is further located in Orange County. Vehicle owners who wish to contest their toll evasion violations or associated penalties are instructed to do so by contacting the customer service office located in Irvine, California.

5.     Venue is proper in this Court pursuant to 28 U.S.C. §1391 because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred here, a substantial part of the property that is the subject of this action is situated here, and Defendants are subject to personal jurisdiction, in this District.

**THE PARTIES**

**Plaintiffs**

6.     Plaintiff Todd Quarles ("Quarles") currently resides in San Diego, California. Quarles, like other San Diego residents, drives North through Orange County upon occasion. At various times over the years, Quarles has been directed on to Highway 73, a Toll Road, by his GPS. On those trips Quarles always stopped at the toll booth and paid the toll fee en route. At some point over the past year or so, Quarles drove to Orange County but was not able to pay his

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

ZELDES HAEGGQUIST & ECK, LLP

ZELDES HAEGGQUIST & ECK, LLP

toll en route as he always had because there were no longer toll booths. He saw signs saying "all autos left lanes" but there was not anywhere for him to pull over and pay the toll road fee. A week or so later Quarles received a Notice of Toll Evasion in the mail with a hefty penalty already assessed even though he never had a chance to pay the toll itself. Faced with either paying the penalty or being subject to further penalties for non-payment, Quarles mailed in payment for the penalty. Due to this experience, the next time Quarles entered the Toll Road, after he got home he went online to www.thetollroads.com to try to pay his toll before being assessed a penalty. He clicked on the "violation resolution" link, but he was then required to insert a reference number or user name and a violation number or password in order to pay – none of which he had. He again, shortly thereafter, received a Notice of Toll Evasion in the mail with a hefty penalty already assessed (and the reference number and violation numbers the website required). The Notice informed Quarles that the toll amount for his drive on the toll road that day, February 22, 2016, was $6.00, plus a significant penalty and warned him that his vehicle registration would be subjected to a lien if he did not respond by April 30, 2016. The Notice also threatened a civil judgment and other collection efforts if Quarles did not pay the fine. Quarles paid the $6.00 toll plus a penalty in the amount of $57.50, for a total fine of $63.50, more than 1,000% of what the toll road fee was.

7.     Plaintiff Todd Carpenter ("Carpenter") currently resides in San Diego, California. Like Quarles, Carpenter had been on Highway 73, a toll road, before and when driving North from San Diego expected to be able to stop at the toll booth en route and pay the toll as he always had. He also saw signs saying "all autos left lanes" but there was never anywhere for him to pull over and pay his toll road fee. Carpenter got home from a trip to Orange County on November 13, 2015, and shortly thereafter, received a "Notice of Toll Evasion" in the mail

ZELDES HAEGGQUIST & ECK, LLP

ordering him to pay $7.78, plus a significant penalty and warning him that his vehicle registration would be subjected to a lien if he did not respond by January 23, 2016. The Notice also threatened a civil judgment and other collection efforts if Carpenter did not pay the fine. Carpenter paid a penalty in the amount of $100.00, for a total fine of $107.78, more than 1,000% of what the toll road fee was.

### Defendants

8.     Defendant SJ TCA is a county or other non-state governmental agency responsible for the operation of the toll road on Highway 73 and the assessment and administration of penalties thereon. Defendant Ross Chun is the Chair of SJ TCA.

9.     Defendant FE TCA is a county or other non-state governmental agency responsible for the operation of the toll roads on Highways 133, 241 and 261, and the assessment and administration of penalties thereon. Defendant Craig Young is the Chair of FE TCA.

10.     Defendants SJ TCA and F/E TCA jointly administer tolls and penalties on their toll roads, and are therefore collectively referred to, and commonly known as, the TCA, headquartered at 125 Pacifica, Suite 120, Irvine, California 92618.

11.     Defendant 3M is a Delaware corporation, located in St. Paul, Minnesota. It is a multinational diversified technology company. The TCA outsourced the Toll Roads administrative functions to 3M, formerly VESystems LLC, for nearly 15 years.[1] 3M provided the TCA with customer service and toll compliance services, including the operation of the customer service center and

---

[1]     TCA originally contracted with VESystems LLC to provide the agency with customer service and toll compliance services. VESystems LLC was acquired by Federal Signal Corporate in 2010 and later by 3M in September 2012.

toll processing, review and processing of vehicle plate images, and violation collection processing services. The customer service and violation processing contract expired on June 30, 2015. 3M received approximately $6.7 million under its contract with TCA for Fiscal Year ending June 30, 2015. Defendant 3M is a "government actor" for purposes of Plaintiffs' state constitutional based claim. Defendant Inge G. Thulin is Chairman of the Board, President and CEO of 3M.

12.     Defendant BRiC-TPS is a California Limited Liability Company, located at 19600 Fairchild Road, Irvine, CA 92612. It provides transaction management services to the transportation industry. On July 1, 2015, BRiC-TPS entered into an interim 18-month contract with TCA to maintain the existing back office software and to employ customer service and violation processing staff on an interim basis while TCA works through procurement for a new back office system and customer service, violation processing and operations system maintenance contracts. Defendant BRiC-TPS is a "government actor" for purposes of Plaintiffs' state constitutional-based claim. Defendant William P. Duffy is the CEO of BRiC-TPS.

13.     The true names and capacities of the Defendants named herein under C.C.P. §474 as DOES 1 through 50 are presently unknown to Plaintiffs, who therefore sue them by such fictitious names. Plaintiffs will amend this Complaint to allege the true names and capacities of these defendants when they have been determined. Each of the fictitiously named defendants is responsible in some manner for the conduct alleged herein. The DOE defendants are private individuals, associations, partnerships, corporations, or institutes who participated in the wrongful conduct alleged herein in ways which are unknown to Plaintiffs at this time.

ZELDES HAEGGQUIST & ECK, LLP

**THE TOLL ROADS:  BACKGROUND**

14.     Toll roads in the United States have been around for more than 200 years and payment of the toll could not be missed:  you were required to physically stop your vehicle at a very obvious toll plaza and throw your money in the bucket or hand it to an agent. California was no different.

15.     The TCA was formed by the California legislature in 1986 to plan, finance, construct, and operate Orange County's toll roads. The Toll Roads were built pursuant to state laws that, due to shortages in funding to build new highways and roads, permitted privately-owned companies, county government agencies, transportation districts, and other entities to sell non-recourse bonds to private investors to raise money to build and maintain toll roads. The Toll Roads are legally owned by the state of California but are operated and maintained by the TCA pursuant to a franchise issued by the state.

16.     The private bonds are issued to investors on a for-profit basis, such that the investors receive a rate of return on the bonds. The revenue on the bonds are paid; however, solely from future toll revenues, and not by any government entity or taxpayer dollars.

17.     Pursuant to this revenue scheme, the TCA built and opened the toll roads on Highways 73, 133, 241 and 261 in phases between October 1997 and February 1999. The TCA continues to operate these roads.

18.     In 1995, to coincide with the private building of toll lanes in Southern California, California Vehicle Code ("Vehicle Code") §§40250, *et. seq.* was enacted making toll violations civil in nature and their collection and administration subject to civil procedures, so that they could be handled by the private and local entities that operate the toll roads. These statutes, however, lack key procedural and substantive constitutional protections, and have been subject to widespread abuse by Defendants with regard to their administration of

ZELDES HAEGGQUIST & ECK, LLP

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1  penalties for toll violations. The radical change in the toll roads operation has
2  converted it to an unfair profit center exacting a windfall off penalties coerced
3  from unsuspecting drivers.

4  ### HOW THE TOLL ROADS WORK

5  19.    Vehicle Code Chapter 13, Article 3, is applicable to all vehicle
6  crossings and toll highways in California. Section 23301 provides that "each
7  vehicle that enters into or upon a vehicular crossing immediately becomes liable
8  for those tolls and other charges as may from time to time be prescribed by the
9  California Transportation Commission."

10  20.    Vehicle Code §40250(b) makes the registered owner of the vehicle
11  involved in the violation jointly and severally liable with the driver of such
12  vehicle.

13  21.    The Tolling agencies in California accept payment for tolls by
14  either: (a) offering an electronic toll collection system (*i.e.*, FasTrak) and/or (b)
15  implementing a pay-by-license-plate method of payment.

16  22.    "FasTrak" is an electronic toll collection system, where people
17  establish a FasTrak account with a tolling agency and then receive a transponder,
18  which they then place on their vehicle. When traveling through the toll zone, the
19  transponder is read by an overhead antenna on the road, and the posted toll
20  amount is then automatically deducted from the customer's account. While
21  people are allowed to use their FasTrak transponders throughout the state, they
22  are encouraged to obtain a transponder from the agency that operates the road,
23  lane or bridge that they will use the most.

24  23.    Vehicle Code §23302(e) defines a pay-by-plate payment as "an
25  issuing agency's use of on-road vehicle license plate identification recognition
26  technology to accept payment of tolls in accordance with policies adopted by the
27  issuing agency."

28

ZELDES HAEGGQUIST & ECK, LLP

7

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

ZELDES HAEGGQUIST & ECK, LLP

24. Vehicle Code §23301.8 regulates pay-by-plate programs as follows:

> Where an issuing agency permits pay-by-plate toll payment as described in subdivision (e) of Section 23302, it shall communicate, as practicable, the pay-by-plate toll amount in the same manner as it communicates other toll payment methods. The issuing agency shall provide publicly available information on how pay-by-plate toll payment works, including the toll amount, process for payment, and period of time a vehicle has to resolve the payment before an issuing agency may process the trip as a violation under Section 40255. Communication of this information may include the Department of Transportation's approved signage, posting of information on the issuing agency's Internet Web site, media advertising, public meeting or disclosure as required by the issuing agency's policies, or other methods of communication. Except where the issuing agency has an agreement with a vehicle owner that specifies in advance any administrative fees that will be imposed on the owner for pay-by-plate toll payment, administrative costs shall be incorporated into the pay-by-plate toll amount, and no additional administrative costs shall be added above the posted pay-by-plate toll amount.

25. Vehicle Code §23301.8 requires the TCA to communicate to the public both the toll payment and how the pay-by-plate toll payment program works. Additionally, any additional administrative costs must be paid by the TCA and cannot be added to the pay-by-plate toll amount.

26. From its inception some twenty years ago, the pay-by-plate option involved manned toll booths where drivers stopped at a toll booth along the toll road and paid the toll by cash. However, the TCA recently converted to an all-electronic (cashless) system and eliminated all the toll plazas. Under the new electronic toll collection system, license plate imaging technology is now employed to assess tolls. When vehicles pass through a toll zone without a transponder (or if the transponder is not active), license plate readers record images of the vehicles' license plates and electronically send the information to the issuing agency or its "processing agent." If the vehicle is not associated with

a pre-established account, the agency determines the owner of the vehicle by accessing DMV records.

### A RADICAL DEPARTURE: DEFENDANTS' NEW "ELECTRONIC" TOLLING SYSTEM

27.    On May 14, 2014, the Toll Roads converted to an all-electronic system, causing a radical change in use and operation of the subject highways. After May 14, 2014, vehicle owners who were not enrolled in FasTrak or ExpressAccount programs with the TCA have been required to pay their tolls online via the TCA's One-Time Toll plan. Under Defendants' scheme, vehicle owners must proactively pay their tolls via an online portal within five days of passing through the toll zone regardless of whether or not the owner even knows that he or she is travelling on a toll road or how to pay the toll.[2]

28.    Defendants do not provide vehicle owners with any advanced notice of the unpaid toll prior to charging them with a penalty. In fact, the main form of notice Defendants provide to vehicle owners are signs posted on the Toll Roads that drivers must read and try to understand while they are driving (usually at high speeds).

29.    Vehicle owners, who do not pay their tolls within the five days, are immediately charged with toll evasion and assessed a $57.50 penalty. Defendants send a "Notice of Toll Evasion" to send to the vehicle owner. Vehicle owners who fail to pay the toll and the $57.50 penalty within 15 days – regardless of whether or not the vehicle owners are sent or timely receive a "Notice of Toll Evasion" (the mailing from the Toll Roads notably does not have a date stamp on it) – are assessed an additional $42.50 delinquency penalty. The Notice also threatens a civil judgment and other collection efforts if drivers do not pay the fine. As a result, on a $7.78 toll, vehicle owners may be required to pay $103.50,

---

[2]    Initially, Defendants set the time limit at within 48 hours but changed it in January 2015 to within five days.

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

ZELDES HAEGGQUIST & ECK, LLP

or over 1,000% the amount of the toll, for one trip on the Toll Roads. If this amount is unpaid, Defendants refer the matter to the Department of Motor Vehicles ("DMV") with a request that the DMV place a "lien" on the automobile registration until the amount is paid.

30.     The TCA outsourced the Toll Roads administrative functions to Defendants 3M and BRiC-TPS (the "private defendants"). Defendant 3M provided the Toll Roads with customer service and toll compliance services for nearly 15 years until its contract expired on June 30, 2015. Thereafter, the TCA retained Defendant BRiC-TPS to provide customer service and toll compliance services to the Toll Roads.

### STATE ACTION

31.     The private defendants are "state actors" who have gone to great lengths to hold themselves out as such by:

(a)     not disclosing their identity as private contractors in communications with the public, but instead act as if they are, and represent themselves as, a government agency, through the Toll Roads website, its office, and all its customer service materials;

(b)     sending out "Notice of Toll Evasion" violations to Class members appearing to be from the TCA,

(c)     threatening to place a lien on Class members' vehicle registration in those letters;

(d)     threatening to impose a civil judgment and other collection efforts on Class members if drivers do not pay the fines set forth in those letters;

(e)     entering into contracts with the TCA, 3M and BRiC-TPS willingly agreed to become "processing agenc[ies]" as that term is used and defined in Vehicle Code §§40252 and 40253;

ZELDES HAEGGQUIST & ECK, LLP

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

ZELDES HAEGGQUIST & ECK, LLP

(f)     entering into contracts with the TCA, 3M and BRiC-TPS became willing participants in a joint venture with a state actor – *i.e.*, the TCA;

(g)     being willing participants in a joint venture with state actors and as "processing agenc[ies]" under the Vehicle Code, 3M and BRiC-TPS are obligated to comply with Vehicle Code §40250, *et. seq*. and the California Constitution;

(h)     processing, review, and collection of toll evasion violation penalties, resulting from their exercise of the coercive power of the State of California; and

(i)     their willing operation of the toll collections, and the processing of the notices of toll evasions and notices of delinquent toll evasions along with the TCA, 3M and BRiC-TPS' were entwined with governmental policy.

32.     The TCA was entwined with, and directly managed, 3M's and BRiC-TPS' activities that are challenged in this Complaint.

33.     Through these activities, collecting penalties authorized by state statute, and threatening vehicle registration holds by the DMV, the private entities are commanding the power of the state.

## DEFENDANTS ALL-ELECTRONIC SYSTEM FAILS TO PROVIDE DRIVERS WITH ADEQUATE NOTICE

34.     Defendants 3M and BRiC-TPS, the private defendants, had independent obligations towards vehicle owners against whom they administered toll penalties for violations on the Toll Roads. As alleged below, Defendants 3M and BRiC-TPS engaged in unfair business practices with regard to the manner in which they administered these penalties for violations on the Toll Roads.

35.     After Defendants eliminated all manual toll collection on the Toll Roads and implemented an all-electronic system, the TCA offered drivers three methods of paying tolls: (a) by using a FasTrak account, (b) by using a pre-

established "ExpressAccount," or (c) by going online and using a One-Time Toll payment option.

36.    According to the TCA's policies, vehicle owners using the toll roads that are enrolled in the FasTrak program or have an ExpressAccount are not required to notify Defendants when they travel the Toll Roads. The toll is calculated by the agency and is charged to the owner's account. Whereas, vehicle owners using the toll roads under the One-Time Toll option are required to proactively notify Defendants when they use the Toll Roads.

37.    The use of the Toll Roads prior to May 2014 was very simple and well established: at some point on any given toll road, a driver was required to pull up to a toll booth and pay a fee, whether a booth was manned or not. Toll roads operated this way since they first opened in 1997 and the mandate to drivers was obvious: stop here and pay your toll.



38.    After the May 14, 2014 Toll Roads conversion to an all-electronic (cashless) tolling system, if a vehicle owner does not have a FasTrak transponder, the TCA's license plate imaging technology will scan and photograph the vehicle's license plate as the person drives past a former tollbooth. If the license plate number does not match a pre-established account,

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

ZELDES HAEGGQUIST & ECK, LLP

then it starts a five-day window, where the vehicle owner is required (without adequate notice) to go online to the TCA's website at www.thetollroads.com and pay the toll, in order to avoid being issued a citation and assessed a penalty.[3]

39.    The TCA's main form of communicating the One-Time Toll program is by placing a few signs along the Toll Roads – some notifying drivers to turn their radio to a particular station for more information. The signs advising vehicle owners that they are entering a toll road do not put drivers on notice, are often small and simply tell drivers "no cash."



40.    The sign provides no warning or notice that a vehicle owner will be photographed and cited, yet a vehicle owner needs to figure out that they must now go online and pay for the toll road fee within a set time period or else be issued a significant penalty – up to 1,000% more than the toll road fee itself.

41.    Many vehicle owners do not realize that they are driving on a toll road until it is too late and they are already on the Toll Roads, with nowhere to

---

[3]    Prior to January 2015 drivers had only a 24-hour window to respond.

ZELDES HAEGGQUIST & ECK, LLP

turn around. At which point, they may (or may not) notice a sign like this on the roadside:[4]



42.    **Distracted Driving**. Bombarded with much information, a driver has seconds to recognize, process and act on the signage they see. Assuming a driver even sees this information, the driver must either try to remember this information, write down a lengthy URL or go to the website – while driving.

43.    A distracted driver is far more likely to get in to an accident. The National Highway Transportation Safety Administration says texting while driving is the same as driving after having four beers. In fact, doing so makes you ***twenty-three times*** more likely to crash.[5] Many states – like California – are enacting laws to help prevent such accidents from happening.

44.    Vehicle Code §21701 prohibits driving while distracted as well as prohibiting someone else from distracting a driver:  "No person shall willfully interfere with the driver of a vehicle or with the mechanism thereof in such manner as to affect the driver's control of the vehicle." Yet that is precisely what the TCA encourages drivers do.

---

[4]    As noted above, the Toll Roads signs recently changed to "5 days."
[5]    http://www.textinganddrivingsafety.com/texting-and-driving-stats/

ZELDES HAEGGQUIST & ECK, LLP

45.    Class members who do not see, read, or understand that the signs are actually warnings that they have already been cited and must take action within a short period of time (or otherwise cannot comply with Defendants' requirements because, for example, they do not have access to the internet) will receive a penalty in the mail and can have their auto registration

46.    Since the conversion to the all-electronic system, the first actual notice many vehicle owners receive of the One-Time Toll program is not until they receive a "Notice of Toll Evasion" in the mail, or in some cases not until they tried to renew their registration at the DMV.

47.    Defendants' method of providing "notice" of the One-Time Toll plan places many tourists, business travelers and seniors at a distinct disadvantage as they are often unfamiliar with the area and they may be confused or focused on things other than road signs which are not directly in front of them.

48.    The TCA's system further discriminates against tourists, seniors, economically disadvantaged individuals, and people without computers or smartphones, who may not have immediate access to the internet and/or ability to operate the same.

49.    Additionally, vehicle owners, like Plaintiff Quarles, who do remember the website and go online have had difficulty navigating the TCA's system and figuring out how to pay their tolls and any associated penalties online. Indeed, many vehicle owners have complained that it was difficult for them to even locate the customer service centers number from their website as it was not readily available. This can be especially challenging for someone who is not very tech-savvy or does not have access to the internet.

50.    Moreover, in order to pay your toll online via the One-Time Toll plan, a vehicle owner is required to recall the specific entrance and exit that he or she took on the Toll Roads, the vehicle's license plate number and state of

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

ZELDES HAEGGQUIST & ECK, LLP

registration (the latter information may not be readily available to someone with a rental car). The specific toll is calculated based on a diver's recall of this information, if a driver overpays the toll it is not refundable and becomes property of the Toll Roads.

51.     Additionally, Defendants failed to provide adequate staff to respond to mailed, online, and telephonic inquiries. One of the major complaints from drivers as Defendants transition to the all-electronic system has been issues with the customer service center. The TCA's customer service center is short-staffed and staffed with inadequately trained personnel, so vehicle owners who call the service center to pay toll invoices and/or challenge toll evasion violations suffer through dropped calls, long hold times and do not always received accurate information about their rights and obligations. Frustrated vehicle owners have had to deal with repeatedly calling and emailing Defendants without getting a response.

52.     With the conversion to the cashless system, Defendants saw a 400% increase in calls to its customer line and a 300% increase in emails. From June 16, 2014 – August 2, 2014, the TCA experienced on average 2,200 answered calls per day and 11,100 unanswered calls per day. Even by March 2015, after Defendants allegedly took steps to correct the deficiencies, customer service remained an issue. Staff at the OC Register randomly placed six phone calls to the customer-service line. Out of the six calls, two resulted in the caller being told that the volume was too high and to try again later and four resulted in estimated wait times of between 11 to 17 minutes.[6]

53.     The Golden Gate Bridge ("GGB") in San Francisco converted to an all-electronic system in March 2013. Nonetheless, the GGB issuing agency offers a fourth method of payment, which is by Toll Invoice. If a vehicle owner

---

[6]     http://www.ocregister.com/articles/toll-655207-tca-violations.html

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

ZELDES HAEGGQUIST & ECK, LLP

does not pay the toll through a pre-established account or via a one-time payment option, then the GGB issuing agency will mail a toll invoice to the vehicle owner with no additional fees. The vehicle owner has 21 days to pay the invoice before late fees are assessed.

54.     According to the TCA, the agency studied how other agencies, including the GGB, handled toll collection in a cashless system, but rejected this type of toll invoicing system as it decided it "wasn't a very efficient process and it was very costly," despite the fact that this type of system would provide unsuspecting vehicle owners with notice and an opportunity to pay the toll prior to being assessed a penalty.[7]

## CLASS ACTION ALLEGATIONS

55.     Plaintiffs reallege and incorporate herein by reference each and every allegation in the preceding and subsequent paragraphs.

56.     Plaintiffs bring this action on behalf of themselves and all others pursuant to C.C.P. §382 because there is a well-defined community of interest in the litigation and the proposed Class is easily ascertainable. Plaintiffs seek to represent the following Class:

> All persons who, between March 24, 2014 and the present, were charged with a toll evasion violation in connection with the Toll Roads' One-Time Toll program and who paid a penalty amount and/or had their automobile registration placed on hold as a result of such violation.

57.     On information and belief, the legal and factual issues are common to the Class and affected all members of the Class. Plaintiffs reserve the right to amend or modify the Class description with greater specificity, and/or further division into subclasses, and/or limitation to particular issues.

---

[7]     *See* http://www.ocregister.com/articles/toll-642283-system-pay.html

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

ZELDES HAEGGQUIST & ECK, LLP

58.   The members of the Class as defined are so numerous that joinder of all the members of the Class would be unfeasible and not practicable. While the precise number of Class members has not been determined at this time, Plaintiffs are informed and believe that during the relevant time period more than one hundred thousand persons were affected by Defendants' unlawful practices as alleged herein. The identity of such members is readily ascertainable via the inspection of records and other documents maintained by Defendants.

59.   There are questions of law and fact common to the Class predominating over any questions affecting only individual Class members. These common questions of law and fact include, without limitation:

(a)   Whether Defendants failed to comply with the obligations and procedures as required by Vehicle Code §§23301.8 in the adoption of their pay-by-plate program;

(b)   Whether the design and administration of Defendants One-Time Toll program violates state procedural due process, by failing to provide the vehicle owners with adequate notice of the program before assessing vehicle owners with penalties;

(c)   Whether the design and administration of Defendants One-Time Toll program violates state procedural due process, by improperly passing along administrative costs of the program onto the vehicle owners by way of penalties;

(d)   Whether Defendants 3M and BRiC-TPS engaged in unfair business practices pursuant to Bus. & Prof. Code §§17200, *et seq.* in connection with its administration of penalties for the TCA;

(e)   The appropriate nature of class wide equitable relief; and

(f)   The effect upon and the extent of injuries suffered by the Class and the appropriate amount of compensation.

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

ZELDES HAEGGQUIST & ECK, LLP

60. The claims of the named Plaintiffs are typical of the claims of the Class. Plaintiffs and all members of the Class sustained injuries and damages arising out of and caused by Defendants' common course of conduct in violation of California laws, regulations, and statutes as alleged herein.

61. Plaintiffs will fairly and adequately represent and protect the interests of the members of the Class. Plaintiffs have no interests that are adverse to the Class. Counsel who represent Plaintiffs are competent and experienced in litigating large class actions.

62. A class action is superior to other available means for the fair and efficient adjudication of this controversy. Individual joinder of all Class members is not practicable, and questions of law and fact common to the Class predominate over any questions affecting only individual members of the Class. Each member of the Class has been damaged and is entitled to recovery by reason of Defendants' unlawful policy and/or practices described herein.

63. Class action treatment will allow those similarly situated persons to litigate their claims in the manner that is most efficient and economical for the parties and the judicial system. Plaintiffs are unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

64. The nature of this action make the class litigation a particularly efficient and appropriate procedure to afford relief to the Class. Further, this case involves a governmental entity and two corporation as well as a large number of individual class members possessing claims with common issues of law and fact. If each individual were required to file an individual lawsuit, Defendants would necessarily gain an unconscionable advantage since it would be able to exploit and overwhelm the limited resources of each individual plaintiff with its vastly superior financial and legal resources. Proof of a common practice or factual

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

ZELDES HAEGGQUIST & ECK, LLP

pattern, of which the named Plaintiffs experienced, is representative of the class mentioned herein and will establish the right of each of the members of the class to recovery on the claims alleged herein.

65.    The prosecution of separate actions by the individual class members, even if possible, would create: (a) a substantial risk of inconsistent or varying verdicts or adjudications with respect to the individual class members against the Defendants herein; and/or (b) legal determinations with respect to individual class members which would, as a practical matter, be dispositive of the other class members not parties to the adjudications or which would substantially impair or impede the ability of class members to protect their interests. Plaintiffs are also unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

**COUNT I**
**Violation of the Due Process Clause of Article I, §7**
**of the California Constitution**
**(Against All Defendants)**

66.    Plaintiffs re-allege and incorporate herein by reference each and every allegation in the preceding and subsequent paragraphs.

67.    The civil penalty scheme of Vehicle Code §40250, *et. seq.*, on its face or as applied by Defendants, violate the due process rights of Plaintiffs and the members of the Class as guaranteed by Article I, §7 of the California Constitution for the following reasons, among others:

(a)    Defendants' method of communicating how the pay-by-plate toll payment program works to the public was woefully inadequate and constitutes a violation of their duties and obligations under Vehicle Code §23301.8; and

20

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1         (b) Defendants employed the imposition of civil penalty

2  assessment so as to maximize revenues for the TCA. Specifically, Defendants'

3  pay-by-plate program does not provide vehicle owners with any advance notice

4  of the unpaid tolls prior to charging them with a penalty. Under Defendants'

5  scheme, in order to avoid being assessed a penalty, vehicle owners must

6  proactively pay their tolls via an online portal within five days of passing through

7  the toll zone regardless of whether or not the owner even knows that he or she is

8  travelling on a toll road or how to pay the toll.

9        68. 3M and BRiC-TPS, though private entities, have acted, and continue

10  to act, under color of state law, and through the policies and conduct herein, they

11  have violated the due process rights of Plaintiffs and the members of the Class as

12  guaranteed by Article I, §7 of the California Constitution. Specifically, though

13  private actors, 3M and BRiC-TPS, for purposes of this cause of action only, may

14  be treated as a state actor, and held liable for violations of Article I, §7 of the

15  California Constitution because they engage in the following conduct:

16         (a) With the approval and encouragement of the TCA, 3M and

17  BRiC-TPS do not disclose their identity as private contractors in

18  communications with the public, but instead act as if they are, and represent

19  themselves as, a government agency, through the Toll Roads website, its office,

20  and all its customer service materials;

21         (b) By sending out "Notice of Toll Evasion" violations to Class

22  members appearing to be from the TCA;

23         (c) By threatening to place a lien on Class members' vehicle

24  registration in those letters;

25         (d) By threatening to impose a civil judgment and other

26  collection efforts on Class members if drivers do not pay the fines set forth in

27  those letters;

28

ZELDES HAEGGQUIST & ECK, LLP

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

(e)     By entering into contracts with the TCA, 3M and BRiC-TPS willingly agreed to become "processing agenc[ies]" as that term is used and defined in Vehicle Code §§40252 and 40253;

(f)     By entering into contracts with the TCA, 3M and BRiC-TPS became willing participants in a joint venture with a state actor – *i.e.*, the TCA;

(g)     As a willing participant in a joint venture with state actors and as "processing agenc[ies]" under the Vehicle Code, 3M and BRiC-TPS are obligated to comply with Vehicle Code §40250, *et. seq*. and the California Constitution;

(h)     Pursuant to their contracts, and with the TCA's express approval, direct control, delegation and significant encouragement, 3M's and BRiC-TPS's processing, review, and collection of toll evasion violation penalties, as challenged in this Complaint, results from its exercise of the coercive power of the State of California; and

(i)     In their willing operation of the toll collections, and the processing of the notices of toll evasions and notices of delinquent toll evasions along with the TCA, 3M and BRiC-TPS were entwined with governmental policy.

69.     The TCA was entwined with, and directly managed, 3M's and BRiC-TPS' activities that are challenged in this Complaint.

70.     Through these activities, collecting penalties authorized by state statute, and threatening vehicle registration holds by the DMV, the private entities are commanding the power of the state.

71.     Plaintiffs and members of the Class will suffer immediate and irreparable injury for which there is no adequate remedy at law if the aforementioned acts of  Defendants are allowed to continue. Plaintiffs and the

ZELDES HAEGGQUIST & ECK, LLP

1   Class therefore seek injunctive relief, both preliminary and permanent, to stop

2   Defendants' unlawful acts described above.

3     72. Plaintiffs are further entitled to recover from Defendants their

4   reasonable costs and attorney fees incurred in bringing this action pursuant to

5   Code of Civil Procedure §1021.5.

6   <strong>COUNT II</strong>

7   <strong>Unlawful Business Practices In Violation of<br>Bus. & Prof. Code §17200, <em>et seq.</em></strong>

8   <strong>(Against 3M and BRiC-TPS and DOES 1-50)</strong>

9     73. Plaintiffs reallege and incorporate herein by reference each and

10  every allegation in the preceding and subsequent paragraphs, except that, for

11  purposes of this cause of action, Plaintiffs disclaim any allegations that 3M and

12  BRiC-TPS are "state actors."

13    74. Plaintiffs are informed and believe and thereon allege that

14  Defendants 3M and BRiC-TPS are private corporations that are in the business

15  of providing customer service and toll compliance services for numerous entities

16  across the country.

17    75. Plaintiffs are informed and believe and thereon allege that

18  Defendant TCA contracted with Defendants 3M and BRiC-TPS to admininster

19  toll violations on the Toll Roads. Defendants 3M and BRiC-TPS are "processing

20  Agent(s)" as defined by the Vehicle Code.

21    76. Defendants 3M and BRiC-TPS have committed and continue to

22  commit and engage in "unlawful, unfair or fraudulent business acts or practices"

23  as defined in Bus. & Prof. Code §§17200, <em>et. seq.</em>, in connection with its

24  administration of toll road penalties on the Toll Roads as follows:

25     (a) Failing to fulfill its duties as a "Processing Agency" as

26  required by Vehicle Code §40250, <em>et seq.</em>, as described in this Complaint,

27

28

ZELDES HAEGGQUIST & ECK, LLP

23

including its duties to (1) provide the required adequate notice before assessing penalties; and

(b) Failing adequately to train its employees; adequately to staff itself; and to develop, maintain and enforce adequate policies, systems, procedures and guidelines to fulfill the duties set forth in the prior subparagraph.

77. Defendants' activities also constitute ***unfair practices*** in violation of Bus. & Prof. Code §§17200, *et seq.*, because Defendants' practices violate the above noted laws, and/or violate an established public policy, and/or the practice is immoral, unethical, oppressive, unscrupulous, and substantially injurious to Plaintiffs and the Class.

78. As a result of Defendants' unfair business practices, Defendants have reaped unfair benefits and illegal profits at the expense of Plaintiffs, the Class and members of the public. Defendants should be made to disgorge their ill-gotten gains and restore such monies to Plaintiffs and the Class.

79. Defendants' unfair business practices entitle Plaintiffs and the Class to obtain preliminary and permanent injunctive relief, including but not limited to, orders that the Defendants account for, disgorge and restore to Plaintiffs and the Class the compensation unlawfully obtained from them.

80. As a result of their ***unlawful*** acts, Defendants has reaped, and continue to reap, unfair benefits and unlawful profits at the expense of Plaintiffs and the Class they seek to represent. Defendants should be enjoined from this activity and made to disgorge these ill-gotten gains and restore to Plaintiffs and the members of the Class the wrongfully withheld wages pursuant to Bus. & Prof. Code §17203. Plaintiffs are informed and believe, and thereon allege, that Defendants are unjustly enriched through their collection of toll fines. Plaintiffs are informed and believe, and thereon allege, that Plaintiffs and members of the Class are prejudiced by Defendants' unfair trade practices.

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

ZELDES HAEGGQUIST & ECK, LLP

81.     As a direct and proximate result of the unfair business practices of Defendants, Plaintiffs, individually and on behalf of all drivers similarly situated, are entitled to equitable and injunctive relief, including full restitution and/or disgorgement of all proceeds which have been unlawfully withheld from Plaintiffs and members of the Class as a result of the business acts and practices described herein, and enjoining Defendants to cease and desist from engaging in the practices described herein for the maximum time permitted pursuant to Bus. & Prof. Code §17208, including any tolling.

82.     The unlawful and unfair conduct alleged herein is continuing, and there is no indication that Defendants will refrain from such activity in the future. Plaintiffs believe and allege that if Defendants are not enjoined from the conduct set forth in this complaint, they will continue to violate California laws. Plaintiffs further request that the court issue a preliminary and permanent injunction.

**COUNT III**
**Illegal Expenditure of Funds in Violation of**
**California Code of Civil Procedure §526a**
**(Against Defendants Chun, Young, Thulin, Duffy and/or DOES 1-50)**

83.     Plaintiffs reallege and incorporate herein by reference each and every allegation in the preceding and subsequent paragraphs.

84.     Plaintiffs are taxpayers and have paid state and local taxes in the past year.

85.     The expenditure of public funds towards the activities described herein, including, but not limited to, the assessment and collection of penalties for toll violations described above constitutes an "illegal expenditure." The activities of Defendants Ross Chun, Craig Young, Inge G. Thulin, William P. Duffy and/or DOES 1-50 as alleged herein have resulted in, and unless restrained will continue to result in, the illegal expenditure, waste of, injury to the tax paying residents of the state of California. An injunction against Defendants

ZELDES HAEGGQUIST & ECK, LLP

Ross Chun, Craig Young, Inge G. Thulin, William P. Duffy and/or DOES 1-50 is therefore warranted to restrain the illegal expenditure, waste of, or injury to the tax paying residents of the state of California.

86.     Defendants Ross Chun, Craig Young, Inge G. Thulin, William P. Duffy and/or DOES 1-50 conduct is causing and will continue to cause immediate injury to the State unless restrained by this Court, and Plaintiffs have no adequate remedy at law.

87.     Plaintiffs are further entitled to recover from Defendants Ross Chun, Craig Young, Inge G. Thulin, William P. Duffy and/or DOES 1-50 their reasonable costs and attorney fees incurred in bringing this action pursuant to California Code of Civil Procedure §1021.5.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment as follows:

A.     That the Court determine that this action may be maintained as a class action with the named Plaintiffs appointed as Class representative;

B.     For the attorneys appearing on the above caption to be named Class counsel;

C.     For injunctive relief to stop Defendants' illegal practices;

D.     For restitution and/or damages according to proof;

E.     For interest accrued to date;

F.     For disgorged profits from the unfair and unlawful business practices of Defendants;

G.     For costs of the suit incurred herein;

H.     For attorney fees and costs pursuant to California Code of Civil Procedure §526a and §1021.5 and any other applicable rules and laws; and

I.     For such other and further relief that the Court may deem just and proper.

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

ZELDES HAEGGQUIST & ECK, LLP

# DEMAND FOR JURY TRIAL

Plaintiffs, individually, and on behalf of all other similarly situated class members, hereby demand a jury trial.

Dated: May 26, 2016

ZELDES HAEGGQUIST & ECK, LLP
HELEN I. ZELDES (220051)
ALREEN HAEGGQUIST (221858)
AARON OLSEN (259923)


By _____ /s/ Helen I. Zeldes
HELEN I. ZELDES

225 Broadway, Suite 2050
San Diego, CA  92101
Telephone: (619) 342-8000
Facsimile: (619) 342-7878
helenz@zhlaw.com
alreenh@zhlaw.com
aarono@zhlaw.com

SCHONBRUN DESIMONE SEPLOW
  HARRIS & HOFFMAN, LLP
PAUL L. HOFFMAN (71244)
723 Ocean Front Walk, Suite 100
Venice, CA 90291
Telephone: (310) 396-0731
Facsimile: (310) 399-7040
hoffpaul@aol.com

Attorneys for Plaintiffs and the Proposed Class